UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| NEWLAND NORTH AMERICA FOODS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-074 |
| | ) | |
| ZENTIS NORTH AMERICA OPERATING, LLC | ) | |
| and NORBERT WEICHELE individually, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION and ORDER**

This case involves a dispute over hundreds of thousands of pounds of sour cherries that Plaintiff Newland North America Foods delivered to Defendant Zentis North America Operating. Newland's Complaint alleges that it delivered these cherries and was then stiffed on the bill by Zentis. Zentis' answered the Complaint, but also filed a seven-count Counterclaim alleging that some of the cherries were defective and that Newland failed to meet its obligations under the contract by delivering all of the cherries that were due. Newland has now moved to dismiss four of the counts of that Counterclaim. For the reasons explained below, Newland's motion to dismiss will be granted in part and denied in part.

## **BACKGROUND**

Only Zentis' Counterclaim is at issue now, so the following factual allegations are all taken from that pleading and accepted as true for the purposes of evaluating Newland's motion.

In 2012, Zentis and Newland entered into two separate contracts pursuant to which Newland would sell to Zentis sour cherries that met or exceeded Zentis' specifications. The first contract was for 5 containers of cherries (220,000 pounds worth) to be delivered to Zentis'

1

warehouse in Fort Wayne, Indiana. These 5 containers were shipped to Zentis in September 2012, and Zentis paid Newland the agreed-upon contractual amount for the first contract. The second contract provided for the purchase of 16 containers of cherries (770,000 pounds worth), and the first five of those containers were delivered in November 2012. Upon inspection, Zentis found that two of those five containers contained defective cherries and immediately notified Newland that it was rejecting a portion of the shipment. Zentis received no response from Newland.

In February 2013, Zentis received a phone call from an attorney representing Newland and was told that Newland was seeking payment for the cherries. Zentis responded with an email indicating that 1) the cherries had been rejected as defective, 2) it wanted assurances that the remaining containers of cherries were going to be shipped, and 3) it wanted to know what should be done with the defective cherries it still held. Newland's counsel responded that Newland believed it had no further contractual obligations, would not be providing any additional cherries, and intended to move forward with a collection procedure for payment of the allegedly defective cherries. Newland then initiated this suit on February 21, 2013.

Also on February 21, 2013, counsel for Newland faxed a letter to a financial institution with whom Zentis does business claiming a right to and interest in Zentis' financial accounts under the Perishable Agricultural Commodities Act ("PACA"). Zentis sees this fax as a big problem because, even though Newland was on notice that the defective cherries were still being held by Zentis (and that there were therefore no proceeds of sale from those cherries), Newland's fax alleged that Zentis had breached its payment obligations to Newland, that Zentis' accounts were subject to a PACA trust, and that funds from the financial institution had to be paid over to

Newland.

Zentis' Counterclaim brings seven counts based on the factual allegations outlined above: 1) breach of contract; 2) breach of implied warranty of merchantability; 3) breach of implied warranty of fitness for a particular purpose; 4) deception; 5) unfair/deceptive trade practices; 6) violation of 7 U.S.C. § 499e; and 7) tortious interference with a business relationship. Newland has moved to dismiss Counts 3, 4, 5 and 7. Zentis agrees that Count 5 should be dismissed, so that count will be dismissed without further discussion. I will consider each of the other counts at issue in the Counterclaim (Counts 3, 4, and 7) in turn below.

## ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "Plausibility"

in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not did they happen." *Id.* (emphasis in original).

**I. Count 3 – Breach of Implied Warranty of Fitness for a Particular Purpose**

Zentis has two counts related to implied warranties – one for the implied warranty of merchantability and another for the implied warranty of fitness for a particular purpose. Newland has only challenged the sufficiency of the allegations related to the latter of these warranties, but recognizing the differences between these two types of warranties is helpful in evaluating Newland's argument. Ind. Code § 26-1-2-314 states that in order for goods to be merchantable they must be "fit for the ordinary purposes for which such goods are used." By contrast, the Indiana Code section that creates the implied warranty of fitness for a particular purpose states: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Ind. Code § 26-1-2-315.

The implied warranty of merchantability is thus a broad warranty that covers the consumer's reasonable expectations that a good will be fit for its ordinary use. The warranty of fitness for a particular purpose, on the other hand, goes beyond a general common use warranty and attaches only when the seller, at the time of contracting, knew of a particular purpose for

which the good would be used. In addition, this warranty requires that the consumer must have relied on the seller's knowledge in selecting the suitable good that would meet the particular purpose.

Zentis makes the bare allegation in Count 3 that "Newland had reason to know of the particular purpose to which the Sour Cherries were required by Zentis." [DE 9 at 7.] Nowhere in the Counterclaim, however, is there any allegation as to what "particular purpose" Zentis had in mind for the cherries. On the contrary, it seems that Zentis simply purchased the cherries "for the ordinary purposes for which such goods are used." Zentis' allegations in this count are thus insufficient to meet the plausibility standard under *Twombly/Iqbal*, and Count 3 will be dismissed without prejudice.

**II. Count 4 – Deception**

Count 4 of Zentis' Counterclaim is based on Indiana's criminal deception statute, which Zentis can rely on for a civil claim if it can also prove it suffered a loss from the deception. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 851 (S.D. Ind. 2005) ("The offense of 'deception' under Indiana law is penal in nature, but . . . a criminal conviction is not a prerequisite to maintaining a civil action based on the commission of that offense. The Plaintiffs must simply show by a preponderance of the evidence that the Defendants committed the crime of deception, and that as a result Plaintiffs suffered a pecuniary loss.") (internal citations omitted).

Count 4 references two separate subsections of the criminal deception statute. First, Section 35-43-5-3(a)(4)(B) states that anyone who "knowingly or intentionally, in the regular course of business, . . . sells, offers, or displays for sale or delivers less than the represented

5

quality or quantity of any commodity" commits deception. Ind. Code § 35-43-5-3(a)(4)(B). Second, Section 35-43-5-3(a)(6) states that anyone who, "with intent to defraud, misrepresents the identity of the person or another person or the identity or quality of property" also commits deception. Ind. Code § 35-43-5-3(a)(6).

There is no doubt that, at least under the *Twombly*/*Iqbal* plausibility standard of Rule 8(a)(2), Zentis' Counterclaim states a plausible claim for deception pursuant to either one of these two subsections. Newland argues, however, that this count should be dismissed because it is actually subject to the heightened pleading standard related to "averments of fraud" under Rule 9(b).

I agree. Despite Zentis' protestations to the contrary, both of these sections of the criminal deception statute are necessarily "premised upon a course of fraudulent conduct" and depend on "averments of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud' — in other words, one that is premised upon a course of fraudulent conduct — can implicate Rule 9(b)'s heightened pleading requirements."). This is explicit with respect to Section 35-43-5-3(a)(6), which requires "an intent to defraud," and it is implicit with respect to Section 35-43-5-3(a)(4)(B), which requires that a misrepresentation about the quality of a product be made "knowingly or intentionally." This Court has reached the same conclusion numerous other times. *See*, *e.g.*, *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2009 WL 1085837, at *1 (N.D. Ind. Apr. 22, 2009) ("[T]he heightened pleading standards of Fed.R.Civ.P. 9(b) govern Forest River's claim of [Indiana criminal] deception."); *ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc.*, 429 F. Supp. 2d 1031, 1042 (N.D. Ind. 2006) (finding that the deception action under the criminal mischief

statute "sounds in fraud" and so is subject to the specificity requirements of Rule 9(b)).

Zentis' allegations related to Count 4 don't come close to establishing "the who, what, when, where and how" of the alleged fraud, as is required by Rule 9(b). *United States ex rel. Garst v. LockheedMartin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). Count 4 is thus insufficient to meet the heightened pleading standard under Rule 9(b), and it will be dismissed without prejudice.

**III. Count 7 – Tortious Interference with a Business Relationship**

Under Indiana law, a claim for tortious interference with business relations requires proof of: (1) the existence of a valid business relationship between the plaintiff and another; (2) the defendant's knowledge of the relationship; (3) the defendant's taking action to intentionally interfere with the relationship (4) the absence of justification for the defendant's action; and (5) damages resulting from the defendant's wrongful interference. *CDW LLC v. Netech Corp.*, 2013 WL 786448, at *7 (S.D. Ind. Feb. 7, 2013). In addition, illegal conduct by the defendant is an essential element of the tort; the plaintiff must prove that the defendant engaged in some independent illegal action in achieving his end. *Id.* Note, however, that "Indiana law on the type and gravity of conduct that will satisfy the 'illegality' element of this tort is not well-developed" and "that violation of a civil statutory duty probably suffices." *Id.*

Zentis' Counterclaim has satisfied the *Twombly*/*Iqbal* plausibility standard with respect to its claim for tortious interference in Count 7. It has alleged that its business relationship with a financial institution was disrupted when Newland's agent (indeed, it's lawyer) sent a fax to the financial institution that alleged that Zentis had breached its payment obligations to Newland, that Zentis' accounts were subject to a PACA trust, and that funds should be paid over to

7

Newland. As Zentis rightly points out, Newland was on notice that there were no proceeds of sale from the disputed cherries but nevertheless still informed the financial institution that there were such proceeds such that a PACA trust had to be established. Thus, it is at least *plausible* at this stage that these actions could amount to either criminal deception or criminal mischief that would be sufficient to satisfy the somewhat fuzzy "illegality" component of tortious interference.

Newland also argues that Zentis has not specifically identified the damages it suffered from this alleged tort, but Zentis has alleged it did suffer damages and that is all that is required at this stage. *See*, *e.g.*, *Smolinski v. Oppenheimer*, 2012 WL 2885175, at *3 (N.D. Ill. July 11, 2012) ("The emotional distress damages pled in Smolinski's complaint are general damages that fall under the same Rule 8 notice pleading standard as the rest of the complaint; they need not be pled with specificity to make out a plausible case that he is entitled to relief, which is all that *Twombly* requires."). Perhaps Zentis ultimately didn't suffer any damages related to this count – but the discovery process will answer that question.

## CONCLUSION

For the reasons detailed above, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Count 5 is **DISMISSED WITH PREJUDICE**. Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Motion is **DENIED** with respect to Count 7. Defendant Zentis North American Operating, LLC is **GRANTED** 14 days – up to and including May 17, 2013 – to file an Amended Counterclaim as to Counts 3 and 4, if it so desires.

**SO ORDERED**.

ENTERED: May 3, 2013                    s/ Philip P. Simon
                                        PHILIP P. SIMON, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT